We have four argued cases this morning. The first of these is No. 16-2498, Christy, Inc. v. Black & Decker, Inc., Mr. Rowland. Good morning. My name is Scott Rowland. With me here today is my colleague Amy Fogelman at Council Table. May it please the Court. I'm sure one thing is clear from the briefs of the parties here, and that is that most of the issues in this case turn on what we contend to be the overbroad constructions of the Claims 1 and 10 by the Board. What I would like to do in my brief time before you today is provide to you three examples where those constructions result in impossibilities and also show why those constructions are improper while I do that. The first two relate to the Board's construction of the term canister as simply meaning a container. Now, a canister is certainly a type of container, and the 640 device discloses a number of enclosures that could have been called containers, the cover, the central housing where the vacuum unit is, the housing that contains the valves, or that which was identified in the specification as the canister. But the Claims, when read in its totality, Claim 1, doesn't just describe the canister, I was going to say in the vacuum, but that's a poor choice of words. It identifies it as having an inlet valve and there's two or more outlet valves which are clear in the specification are the sources of the ambient air in and the exhaust through the vacuum source back to ambient air, the clean air. If you're focusing on the construction of the term canister, why don't the other claim elements add the necessary features to the invention but not alter the starting point, if you want to call it that, of what the canister is just as a term? It has to have these other features, but that doesn't come from the meaning of the term, but from the other claim elements. I think it does define the term in this way. When we look at the other intrinsic evidence that was before the Board, that includes Hayden, which was the principal prior art considered by the examiner. Hayden describes what I think to be exactly what the canister is here at page 333 of the appendix. This canister argument relates only to Hayden, right? Pardon? The canister argument relates only to Hayden, right? I'm sorry, I'm not forcing you. Your argument about the meaning of canister relates only to the Hayden anticipation issue. Not really. It also applies to Iben, not on the anticipation basis, but Iben will illustrate, and I'll get to it in a moment, why this construction is overly broad. All right, why don't you continue? Hayden says at page 333, the conventional dust collector operating through filtration consists of a cabinet essentially airtight and operating through its internal parts at sub-atmospheric pressure created by a blower at the point where the clean air is discharged from the cabinet to free air. That's how he describes the conventional dust collector through filtration. Hayden and 640 are conventional dust collectors, and the essence of any of these devices that would be understood by a mechanical engineer practicing in this field is you have to have an airtight container. When the air is evacuated, that's what creates the vacuum. This canister is the container that is between the ambient air being brought in that's got dust and the blower, which creates the vacuum by evacuating that air. As Hayden makes clear, that's what's referred to here. The specification further makes that clear because that's the function of this device. However, the board didn't adopt that construction. Instead, it adopted Black and Decker's construction, which essentially said a container that has filter and dust in it, and that's what gave rise to the first of the problems that we have here. What is your definition of container? Did you ask the board to construe a container?  because we didn't think it was necessary in this field in which every single vacuum filtration device has a canister to contain the sub-atmospheric air. It has to exist. That is what creates the vacuum. We didn't feel like in this context it needed further definition than it did, but I would say if I was going to provide a construction, the construction that Hayden provides as the conventional dust collector is what applies to us. It applies to Hayden, and frankly, it applies to Ivan as well. I'm sorry, I still don't understand. The word canister, what is your exact... The board found it's a container. The specification expressly says canister 10 is a cylindrical container. What is your fault with that definition? What precisely do you think the word canister should be construed as? The canister is the container which contains the sub-atmospheric air. It isn't just any container. In a vacuum device, it is the container which creates the vacuum by the vacuum source evacuating the air from it. It's the central part of any vacuum device, and that's why Hayden describes it as it does, which I think is as good a description as there is. Say it one more time. What precisely do you think the construction should be? I don't think I can say it better than Hayden does. It's the essentially airtight container of the atmospheric pressure that's created by the blower at the outlet and which draws the ambient air in from the inlet. That's all of the things that a canister in Hayden does functionally. This is a structural claim, and we're trying to figure out what the use of the word canister means. I don't understand. You'd like me to import from Hayden all of the functions the canister does into the definition in Claim 1 of a structural element? Claim 1 defines the canister as having an inlet port and at least two outlet ports. Correct. That excludes the other containers that are involved in the 640 patent. It is the container that has the inlet port and the outlet port. Well, then why isn't that your argument? Why is your argument that there's a problem with the word canister? Why isn't your argument that these other things don't have two inlet ports, two valves disposed outside, each valve being pneumonic? Why aren't you focusing on these other claim elements if that's what you think distinguishes this from the anticipatory reference? Because I think the broadest reasonable construction is that the canister is the container of the subatmospheric air because the points of entry of ambient air and the points of exit are that inlet valve and those two outlet valves. The problem with what the board did in Hayden is twofold. Number one, it applied an unnecessarily narrow construction by just saying part of the cabinet, as Hayden describes it, or the canister, as it's described in 640, is a canister. And when coupled with the board's definition of ambient air, it leads to a result that can't be right. The board described ambient air as being air outside of the canister. And that's true because the canister is the enclosure in which the vacuum is created. Air outside is ambient air. But when you look at Hayden, the board said that just the lower dirty air chamber was a cabinet. That would mean that the upper clean air chamber, all of which is within the pressure vessel, is ambient air. But Hayden says specifically his entire cabinet is subatmospheric air, and Black and Decker concedes that its upper chamber is negative pressure air. Negative pressure air can't be ambient air by definition, and in fact the Hayden device would not work if there were ambient air in its upper chamber because it depends upon its valves being located within the negative pressure. And in fact the declaration by Black and Decker's expert specifically says that when Hayden goes into backflush mode and needs ambient air, it has to reach outside of its chamber, its canister, to reach ambient air. So the board's definition doesn't work. If it uses a narrow definition to say this subcompartment, then it has to have the absurdity that negative pressure air is the same thing as ambient air, and a construction in which the Hayden device won't even work. It's an example of why that construction can't fit. It's also perplexing to us... Does Hayden tell us whether the pressure is the same in the dirty room and the clean room? It just describes it as all subatmospheric air. It doesn't describe whether one of those relative to the other is higher or lower. Are you saying that the air in the upper chamber is not ambient air because it's different than atmospheric pressure than outside air? That's correct. And it's also under the direct influence of the vacuum. Hayden says specifically that his entire cabinet contains subatmospheric air. And Black and Decker concedes that the upper chamber is negative pressure air. And if you read the specification of Hayden, it has to be negative pressure air for his device to work. Now, the second instance in which canister is perplexing to us is when... Did you ask the board to construe ambient air as meaning normal atmospheric pressure? We didn't because the definition of ambient air, the word ambient, has a common understanding, and it's air that's not been pressured or compressed. How do we know that's the common understanding? That would be the understanding of any mechanical engineer who applies it. How do we know that? It's unaltered. How do we know that? We know it from also the context of both of these patents because these devices depend on ambient air to flush. That air has to be a different pressure than the negative pressure air. That's what releases the particles in both 640 and in Hayden. They both say we've got to reach outside of our devices, outside of our canister, to get that ambient air. So the differential between ambient air and the negative pressure air has to exist. That is what they both function. Otherwise, neither of them backflush. Now, when the board took that construction and applied it to Ivan, as you'll recall in 472, Ivan is a baghouse that has multiple large chambers in it. Each chamber has filters and it has dust. It has a hopper on the bottom. But rather than consistent with Hayden, saying that each of those compartments is a canister, the board said that the whole amalgam, the whole combination, all those compartments plus the hopper equals the canister. A completely inconsistent construction and application that's based on the fact that it was overly broad. I would submit that the board got it right in Ivan because all those devices are the negative pressure chamber there. I see that I'm into my rebuttal time, and I would like to reserve some of that. If you have no further questions now, I'll yield. All right. Why don't you reserve your rebuttal. Mr. Collins? Thank you. May it please the Court. I'll start off with addressing the canister limitation. And it seems it has some intertwinement with what the notion is of ambient air. I kind of find that issue to be interesting because we had originally actually proposed to the board below that ambient air was unforced or compressed air from outside the machine. This definition of ambient air being anything that surrounds the canister actually was their definition. And the board, if you look at Appendix 11, said we were wrong and that ambient air should include air that's inside the machine and air that can be of any particular pressure. So what the board basically gave was their definition of an extremely broad definition of ambient air. I think it's a little bit late to go back and say our definition was right. But with that incredibly broad definition, the negative pressure air that's inside Hayden's clean air chamber that's above the plate certainly could be ambient air because it is part of the air that surrounds that canister. And I actually think the words in a vacuum, although there's a little bit of a pun to it, is a perfect choice for this case because that is what the container is. It's the part of the vacuum that contains the things that you want to contain, which is the filters, which is the dust. If you read the claim, it has three outlet ports or two or more outlet ports. It has an inlet port. It has the filters. That's why people call these things canister vacuums. That's where the dust ends up going. And where the word container really came from was at the Appendix 720. Their counsel said, what can we be certain of when we hear these names in that claim? We hear canisters, cabinets, and compartments. Well, essentially they are all some kind of container. That's exactly what he said to the board right in his opening statement before there were questions about any of the prior art. I think that should end the debate there on what a container is. That's their definition. And the question of what ambient air is their definition. I gather Mr. Rowland's view is that a canister is some kind of container, but not any old container. And to know what kind, you need to look at the context of what this device is supposed to do. And I think he says, if you look at Hayden in particular, you can't view the dirty chamber alone as the right kind of container or there would be an operability problem. I actually would disagree with that. We had witness testimony that said the canister is the thing that contains. Now, this is the pragmatic part. If we're using a vacuum cleaner, what is it that we want to contain? We want to contain the dirt. Nobody, if the air goes in or out, we want to contain the dirt and get out the clean air. And that's what the filters are for. So while many parts might actually be a container, I guess you could point at sort of any enclosure and say it contains something, the question is, which one is the container that has the inlet port, the filters, and the outlet ports, and the valves outside it? And that's what the claim requires. And if you look at Hayden, it has an inlet port. It has a bunch of filters, number seven, inside it. It's got the plate nine on top of it. And those plates have holes in them that the filters connect to. Those are the outlet ports. That is the container of the claim. And the valve sits above nine. Exactly. The valves sit on top of the plate, which is outside of the container. And that's all the claim requires. The claim does not say the valves actually have to stay in ambient air. That requirement is found nowhere in the claim. It's not even mentioned in the specification because the specification is silent as to, well, I should go back depending on how one construes ambient air. It's silent about what the pressure of the air is inside the cover. In some of these vacuums, the exhaust can go inside the cover so that top part can be pressurized and be at high pressure. Sometimes they can eject the vacuum, the high pressure, right out of port so that the inside of the cover is not pressurized. The specification is actually silent on that issue. But with the board's interpretation of ambient air as being any air at any pressure, which they expressly said in their opinion and got from the petitioner's side or the appellant's side of the case, I think that resolves the question that the negative pressure air that's in the chamber above is perfectly part of the ambient air, even if the words in ambient air appeared in the claim, which they don't. And, again, I think this whole ambient air issue  because in that situation the valves are actually on the very outside of the housing. In regard to Hayden, it's much less of an issue, but no matter what Hayden does draw in the ambient air from the outside of the machine anyway, it just happens to open through a port in the wall. And I think if we were to call the canister, I think it's unusual to do claim construction about what a canister is while you're reading Hayden because really I think the proper exercise that should have been done is to read it in the context of the 640 patent. And really the only part in the 640 patent that contains all those parts is the vacuum below. But if you were to start excluding things that go above that, then you start excluding the cover in that patent, and we think that would be wrong because that would read out the disclosed embodiment. The other term that was in dispute was pneumatic communication. This is a little bit unusual because throughout the proceedings below, the real dispute was pneumatic communication, and I think somewhere along the line in this appeal, the issues come a little bit more about the word connection. And I think what they're trying to do is impart a structural requirement into the word connection there, and we think that's wrong. If you read the patent and look at the claim as a whole, the word connection that they're using is really talking about a valve state, meaning is it connected to this or is it connected to ambient air? They're not talking about physical connections when they use that word. Is it your understanding that in order to be operable, there must be some sort of protection between what's inside the path of air communication and what's outside that path? Some sort of guidance or collection, something that defines a communication that enables transfer from point A to point B. I'm not sure. I believe that the definition we offered was that communicate means it can transfer from one to the other. Pneumatic means it relates to the air. But certainly when you deal with the air, there has to be some guidance. For example, it might not necessarily be what you classically call a connection, like a duct or a pipe. It could be something more large collection. If you were to open that door there and open that door there, and there's a breeze going through, this room would, in a sense, connect those two doors and guide the air flow through. You might not call a room a connection, but some sort of collection or guidance, I would agree with that principle. That's really what the board said, was that the claim is not limited to any particular connective structure. They didn't say it can't have anything that would control the air flow. I was struck, I think, by the board's use of the word particular as what was not being required, as opposed to not having something that could be called a connection at all. Sure. I think their construction was right in the sense where they're saying it's not limited to how you do it. For example, with Hayden, that upper part that encircles the valves, it collects all the air coming out of those valves and directs it up into that vacuum source. That is a connection. It seals it from the outside world. That really truly is, in that sense, it's a pneumatic communication because it keeps other air from getting sucked up into the vacuum. Can I change the topic? Absolutely. Motivation to combine to reach over to von Stackelberg. Yes. Where's the evidence and where are the board's findings about the motivation? Absolutely. This is for certain dependent claims. Gotcha. 2, 3, 11, and 12. Absolutely. Let me jump to the back of my outline. This would be in the Hayden decision, so it would be at the back end of the Hayden decision. Von Stackelberg. So we did have a declaration from Mr. Grant in terms of evidence on this issue. And the reason to combine, well, first of all, if you look at the structures themselves, they're extremely similar. It's a baffle with which an airflow strikes. But perhaps serving somewhat different purposes. Extremely close purposes. And what I would say is in von Stackelberg, they talk about that baffle. It creates a circular airflow in the top part of the machine. And as things come into it, including liquid and particles, those strike the baffle and they get directed downward where there's a lower cyclonic velocity going below. So von Stackelberg was talking in a sense about a shop vac that might take up some water and particles. If you were cleaning your workshop floor and had a spill, you might have wood chips and water on there. So it was knocking down particles. And it showed you a way to keep the particles from going up into that high velocity area. What specifically did the board find and what evidence did it point to that says somebody would have, I guess, starting with Hayden, would have a motivation to say, I have a problem. Here's a solution I can find in von Stackelberg. Let's combine them. The appendix at 29. They talk about the trial record establishes that the duct and baffle arrangement in both the combination and challenge claims would allow particles to settle to the bottom of the canister and minimize entrainment of particles in an upper portion of the canister where air exits through the filters. So if we step back for a second, remember that the invention of Hayden and the 640 patent is I'm trying to clean the filters, right, because they get clogged. And part of the rationale of these in von Stackelberg is, well, if you stop particles from getting on it in the first place, you have to clean it less often, and that's part of the reason. But to go on, in addition, Hayden teaches a dust collector having an inlet on the side and filters within a canister. Therefore, petitioners provide an adequate rationale for modifying the air inlet in Hayden's canister with the dust and baffle structure. We agree that there's an issue about shields, which is not really raised here, but really it was an ounce of cure, ounce of prevention, pound of cure, that if you can use von Stackelberg to knock down the particles so that they're less likely to get to the filters, you're going to have less clogging of the filters. And that's also part of the evidence that is cited in here. That included the grant declaration, which I believe is cited on page 28, and a lot of the arguments are addressed there in that section. And the rationale is if you can prevent things from getting to the filter in the first place, you just have to clean it less often, and that's the argument that was presented below, and a lot of that is cited in here, and that's their rationale, which are findings of fact. Great. Anything further? If there are no further questions, I'm prepared to hand off. Thank you, Mr. Holland. Thank you very much. Mr. Roland. Thank you. I do want to address the Court's questions about pneumatic communication because that, I think, has been something of a red herring in this appeal and even below. Pneumatic communication is a requirement of the claims, but Christie has never contended that pneumatic communication doesn't exist in Hayden or Ivan or in every vacuum cleaning device because the function requires pneumatic communication from the inlet port into that pressure vessel to the outlet port where the vacuum exists. The issue here is how does that pneumatic communication exist? And what the Board did was it did not look at the specification and the prosecution history that gave meaning to the words and the claims connected to. If those were mutually consistent and there was no independent meaning for connected to, there was no reason for the 640 patent to, after it requires pneumatic communication, to require that the valves and filters are connected to said vacuum, which it does require. Different words are used for different meanings, and here the meaning is crystal clear in the specification. One of the best examples of that is when one looks at the operation of the valves in the 640 patent where it says on page 201, one reciprocal port of each of the valves is connected to a vacuum source and the other reciprocal part of each valve is in pneumatic communication with ambient air. The metaphor that counsel used of opening the doors, I agree that that's pneumatic communication, and that's what happens with the ambient air in 640 because the valves are disposed in ambient air. However, if I want pneumatic communication between this room and a room two doors down the hall, there has to be a hallway to connect those two, and that's what is specified with a duct, and in the prosecution history... But I'm not sure that the board... You seem to say that when the board said it doesn't have to be a duct, that the board was simultaneously saying there doesn't have to be any kind of structure that provides sufficient enclosures like your hallway that enables the air to move from inlet to outlet, and I'm not sure that the board said that. I think the board did exclude any requirement of a physical connection, and that's what we contend is required, a physical connection. In this case, a duct. Physical connection is not required. I think it excluded that possibility. I think in this case, a physical connection is specifically required, and that's our point. The construction that says that one isn't required, we think, is inaccurate. Our device was distinguished from prior art Nelson because we said that Nelson doesn't have the claimed connection of components and that the vacuum in our device is directly connected by ductwork. That's what the connected two means here, and most importantly, if there isn't a physical connection in our device, our device cannot function. Our device, unlike Hayden, has the valves disposed outside of the pressure canister. The only way that access can be had to a vacuum source is by a physical connection to that. We're not located in it like Hayden is. That's, at the end of the day, what distinguishes these two devices. Hayden requires that its valve be located in negative pressure. Ours requires that our valves not be located in negative pressure. That's clear looking at these two patents, and so parsing the words canister in an overly broad way, calling negative pressure air ambient air leads to an absurdity in which it won't even function, and that's, at the end of the day, where we are. Thank you, Mr. Relman. We're out of time. Thank both counsel. The case is submitted.